# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MARY DAVIS, MAUREEN COLLIER, and THE POLICE RETIREMENT SYSTEMS OF ST. LOUIS, Derivatively on behalf of TARGET CORPORATION,<br><br>Plaintiff,<br>v.<br><br>GREGG W. STEINHAFEL, BETH M. JACOB, JAMES A. JOHNSON, JOHN MULLIGAN, ANNE M. MULCAHY, ROXANNE S. AUSTIN, CALVIN DARDEN, MARY E. MINNICK, DERICA W. RICE, JOHN G. STUMPF, DOUGLAS M. BAKER, JR., HENRIQUE DE CASTRO, KENNETH L. SALAZAR, and SOLOMON D. TRUJILLO,<br><br>Defendants,<br><br>- and-<br><br>TARGET CORPORATION, a Minnesota corporation,<br><br>Nominal Defendant. | Civil Action No. 14-cv-00203 (PAM-JJK)<br><br><br><br>**AFFIDAVIT OF KATHLEEN A. BLATZ** |

STATE OF MINNESOTA  )
                    ) ss
COUNTY OF HENNEPIN  )

I, Kathleen A. Blatz, hereby declare and state as follows:

## Appointment to the SLC

1. I am a member of the Special Litigation Committee (SLC) of the Board of Directors (Board) of Target Corporation. I have personal knowledge of the matters set forth in

my affidavit, which I submit in support of the SLC's motion for approval and dismissal of the shareholder derivative claims asserted in the above-captioned matter.

2. On June 11, 2014, in accordance with Minn. Stat. § 302A.241, Subd. 1, the Board established the SLC after it received the shareholder demand letter from the Paul Perry Revocable Living Trust, which raised claims arising out of the same core facts as alleged in this derivative action. The Board invested the SLC with complete power and authority to investigate the allegations, claims, and requests for relief; to determine whether and/or to what extent Target should pursue those rights and remedies; and to respond on behalf of the Board and the Company.

3. Professor John H. Matheson and I were appointed to the SLC.

4. On July 24, 2014 the Board passed an additional formal resolution expanding and confirming the scope of the SLC to include the shareholder demand letter, the pending shareholder derivative complaints, and any future derivative claims arising out of or relating to the same subject matter as those raised in the demand letter and derivative complaints. (Attached as Exhibit A are copies of the Board Resolutions.)

5. At the time of my appointment to the SLC, I understood that the Board sought to ensure the independence of the SLC by appointing two members of Minnesota's legal community who had never served on or been associated with Target's Board. Before I agreed to serve on the SLC, I confirmed that I did not have any material personal, professional, familial, or financial ties with Target or with any of the officers and directors named in the derivative actions or demand letter. My involvement as a Target Board member will cease upon completion of my duties on this SLC.

6. My compensation for work on the SLC was based solely on the normal hourly rates I charge in the practice of law.

### Qualifications and Background

7. I was appointed Chief Justice of the Minnesota Supreme Court in 1998 and served in that capacity until I retired on January 10, 2006.

8. Prior to being appointed Chief Justice of the Minnesota Supreme Court, I served as an Associate Justice of the Minnesota Supreme Court from 1996 until 1998 and as a District Court Judge for the Fourth Judicial District of the State of Minnesota (Hennepin County) from 1994 to 1996.

9. Before my appointment to the bench, I served in the Minnesota House of Representatives. I was elected to the first of eight terms in 1978. During my legislative tenure, I served on various committees, including the Tax, Financial Institutions and Insurance, and Judiciary Committees.

10. At the legislature, I held several leadership positions, including that of Assistant Minority Leader and Chair of the Crime and Family Law Committee.

11. I also served as an Assistant County Attorney in the Hennepin County Attorney's Office during my legislative career and practiced law at Popham, Haik, Schnobrich & Kaufman Ltd.

12. Since my retirement from the Supreme Court, I have served as an arbitrator in commercial disputes. I am a qualified arbitrator for the American Arbitration Association and am on the roster of arbitrators for large, complex commercial disputes. I have served on numerous boards, including as a director on the Columbia Funds Board, where I chair the Governance Committee, and as a director/trustee on the Blue

Cross Blue Shield of Minnesota/Aware Integrated, Inc. Board, where I chair the Business Development Committee.

13. I also served as a member of the Special Litigation Committee of UnitedHealth Group Inc., tasked with investigating shareholder derivative claims involving breaches of fiduciary duties by its officers and directors.

14. I am a 1976 graduate of the University of Notre Dame, *summa cum laude*, Phi Beta Kappa, and a 1984 law graduate from the University of Minnesota Law School, *cum laude*. I also received a Master of Social Work from the University of Minnesota School of Social Work in 1978.

## Work on the SLC

15. In July 2014, Professor Matheson and I retained Gaskins Bennett Birrell Schupp, LLP as our independent counsel to provide legal advice and assist us with all phases of our work, including document collection and review, planning and administration of our investigation, preparation for and participation in witness interviews, and selection and retention of various experts. Counsel has never represented Target or any of the other named defendants.

16. Counsel provided legal guidance concerning the available methods to resolve the claims against defendants in the derivative actions and putative defendants identified in the demand letter and assisted in the investigation and in the preparation of our final report. Counsel advised us on the applicable legal standard and the law governing derivative claims. We relied on the assistance and advice of counsel throughout our investigation.

17. We also retained experts to analyze certain issues and relied on their expertise in the investigation.

18. We retained Evan Francen, CISSP CISM, to provide consulting services on the technical aspects of the data breach. Mr. Francen is an information security expert with more than fifteen years of progressive technology and information systems security experience in both private and public companies.

19. We retained William McCracken to consult on issues of corporate governance related to data security. Mr. McCracken serves on the National Association of Corporate Directors Board of Directors, a position he has held since 2010.

20. Over a period of twenty-one months, we conducted a detailed investigation into the circumstances surrounding the data breach as well as Target's disclosures about it. We examined the roles of the officers, directors, employees, and third-party consultants in Target's data security program.

21. We conducted our investigation in accordance with the fundamental principles of independence and good faith. Our focus was broad, in large part because of the depth, breadth, and complexity of the issues raised by the demand letter and derivative complaints. We were mindful that we would ultimately have to decide, with respect to the demand letter, whether Target should accept or reject, in whole or in part, the demand for legal and other remedial action, or whether it should start its own legal action or seek other remedies. We would also have to decide whether Target should intervene in and take over the prosecution of the derivative actions, seek dismissals, or simply abstain and allow the plaintiffs to proceed derivatively on Target's behalf. We focused on discovering reliable, truthful, and reasonably complete information upon which to make a judgment about whether legal actions against Target's officers or directors would be in the best interests of Target.

22. During the investigation, we gathered evidence about all of the relevant issues raised in the derivative complaints and the demand letter, considered all of the evidence we amassed, and deliberated on all of the factors we must take into account in determining what course of action would be in Target's best interests.

23. Throughout the course of our investigation, we requested, Target produced, and we reviewed and analyzed thousands of documents that included, among other items: minutes and materials from Target's Board of Directors meetings and from pertinent Board Committee meetings; company policies, procedures, and standards; organizational charts; training materials; internal emails and other electronically stored information; security alerts; investments in data security; diagrams of Target's network; human resources documents; reports and work papers from third-parties; contracts with the payment card networks; and various insurance policies. In response to our written information requests and document requests, Target provided written answers and produced over 55,000 documents in total. Throughout the investigation, we requested additional and supplemental documents from Target as issues arose, and Target fully cooperated and produced all requested materials.

24. We also requested relevant documents from the director-defendants. Collectively, the director-defendants produced approximately 1,300 documents in response to our request.

25. We also had unrestricted access to a database containing approximately 465,000 documents produced in the Target MDL and maintained by Target's outside counsel. We also requested and received the transcripts of all depositions taken in the Target MDL. Coordinating Lead Counsel over the MDL and Lead Counsel for the financial

institution plaintiffs made deposition transcripts available to us, as did counsel for Target.

26. In addition to the documents provided to us for our review, we also reviewed many documents available through public sources.

27. Throughout our investigation, we asked for and received access to documents that included attorney-client privileged and other confidential information with the understanding that we would, absent intentional waiver, maintain their confidentiality.

28. At our request and under our supervision, counsel performed comprehensive searches of the documents collected, reviewed the documents retrieved, reported on their findings, and provided thousands of pages of relevant materials for our further review. To the extent any pertinent documents were incomplete or illegible, counsel requested and received accurate copies from Target.

29. Additionally, counsel accessed financial reports and records of Target and other companies through the SEC's EDGAR database, articles on information security and corporate-risk governance, including information-security-risk governance, and pleadings, decisions, and other papers in related cases and investigations and reviewed the legal holds issued to Target employees and directors. Counsel provided salient information to us for our review and discussed these topics with us and our experts. We also conducted our own research on pertinent topics, including corporate governance of information security risk.

30. Our review of the documents was ongoing throughout the investigation.

### The Meetings of the SLC

31. Throughout our investigation, in addition to engaging in telephone calls on a regular basis, we met with counsel in person on more than 100 occasions. We reviewed the evidence developed, assessed the credibility of the witnesses, and ascertained what additional information might be necessary or desirable in order to determine what course of action would be in the best interests of Target.

32. At one of our meetings, and at our invitation, Target's counsel gave a presentation on the facts and issues raised in the demand letter and derivative complaints from Target's perspective. Also, on two occasions, we invited the attorneys for the derivative shareholders and the attorneys for the demand shareholder to meet with us and make a presentation on the issues arising from their allegations, including their view of the factors bearing on whether there were rights and remedies Target had against the defendants named in the complaint and the demand letter that were in Target's best interests to pursue. Counsel for the plaintiffs in the above-captioned matter, along with the counsel for the state derivative plaintiff, responded with a telephone presentation and a written submission in October 2014. They also provided a written submission in response to our second invitation in February 2016. Finally, counsel for the individual director-defendants requested the opportunity to make a presentation on behalf of its clients and we agreed to hear the presentation.

33. Along with our counsel, we toured Target's new Cyber Fusion Center, which serves as Target's round-the-clock alert response center, and met with Target's Chief Information Security Officer, Brad Maiorino, Target's Vice President of Cyber Security, Dave

Baumgartner, Target's Vice President of Information Security, Rich Agostino, and Target's Senior Director of Cyber Security, Tim Crothers.

### SLC Interviews

34. With counsel present, we conducted a total of 73 interviews involving 68 individuals. These interviews enabled us to corroborate and contextualize the documentary information we had gathered, evaluate the significance of data, gain an understanding for Target's corporate culture—especially as it related to data security—assess employees' morale, understand employees' attitudes towards Target's data security policies and processes, and determine how those policies and procedures were implemented throughout the company. I actively participated in all of these interviews, most of which took place in person and three being conducted by video conference. To conduct the interviews, with counsel present, I traveled to Washington, D.C. twice, New York City, and San Diego.

35. The people we interviewed included: Target's current and former officers who are named as defendants; the current and former members of Target's Board of Directors who are named defendants; Target's current and former chief compliance officer; personnel from the general counsel's office; members of Target's Corporate Security team; members of the Target Information Protection team; members of the Target Technology Services team; Target's point-of-sale hardware engineers; Target's network engineers; Target's internal auditors; and representatives from Target's third-party cardholder data security assessor and its independent auditor.

36. In its October 2014 written submission, counsel for the plaintiffs in the above-captioned matter, along with counsel for the state derivative plaintiff, suggested potential

witnesses, interview questions, and experts. We considered the potential witnesses identified by the derivative shareholder plaintiffs' counsel and evaluated the need to conduct a personal interview with each individual listed. We also considered and evaluated the derivative shareholder plaintiffs' counsel's interview questions and experts. Although we considered the suggestions of the derivative plaintiffs' counsel, we conducted our own independent investigation. We did not share the information gathered or our conclusion with the plaintiffs, the individual defendants, Target, or their respective counsel until we issued our report.

37. In addition to the 73 interviews in which we personally participated, counsel, as a part of the investigation, conducted two additional interviews and reported on the issues raised and the information discovered to us. These interviews were of employees involved in risk assessments and risk treatment. Counsel also met and had telephone conversations with a number of attorneys possessing relevant information, including Coordinating Lead Counsel in the MDL.

### The SLC's Conclusion

38. I am confident that the SLC has received sufficient pertinent information to thoroughly understand the facts and the relevant parties' positions and views and reach an informed, reasoned judgment as to the best interests of Target with respect to the derivative actions and the shareholder demand. Having concluded our investigation, we reviewed the material developed during our investigation, deliberated, and adopted the Report of the Special Litigation Committee.

39. On March 30, 2016, we issued the Report of the Special Litigation Committee and on March 31, we delivered the SLC's Report to Target, the individual defendants, and the derivative and demand shareholders, which set forth, among other things, our intent to dismiss the shareholder derivative claims here. Attached as Exhibit B is a copy of the Report of the Special Litigation Committee.

_____
Kathleen A. Blatz

Subscribed and sworn to before me
this May 5, 2016.

_____
Notary Public

JANET K. TAKATA
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2020